Council ready? If they are, let's call 17-6088 Davilla v. Enable Midstream Partners. Mr. Lester, you first up. You may proceed. Thank you. May it please the Court, I'm Andy Lester. I'm here on behalf of the Enable parties, the appellants, the defendants below. I'm accompanied by Michael McClintock, who has not actually entered an appearance in this part of the case, but is involved in the case. Mr. McClintock is a member of the Bar of the Tenth Circuit and was a former law clerk to former Chief Judge Robert Henry. By failing to address... I'm not sure I would have mentioned that. You were doing well until that point. Thank you. By failing to address the prima facie element of the federal trespass claim here, demand by the plaintiffs or the United States for removal of the underground pipeline laid by another entity, pursuant to a validation, the district court, on a motion for partial summary judgment, found a trespass and inappropriately issued an injunction. It should not have done so. The plaintiffs below, the movants below, had the burden to establish the elements of their claim. They didn't do so. One of the elements of their claim is a demand for removal of the of, in this case, it's a pipeline. What purpose does the demand serve in this circumstance? You've got a contract. The contract expires. You're certainly on notice that you have no right to be on the land after the contract expires. What purpose does the demand serve? I don't find that anywhere in the restatement, for example. Well, I... You can disagree with me. Judge Hartz, I'm about to disagree with you a little bit on that. I think they do have a right to be there. They're essentially what you would call a holdover. They're certainly not there under the grant that they had in the easement that existed from 1980 to 2000. Doesn't the contract say upon termination you should restore the land as close to original condition as possible? There's nothing, and I don't have the easement in front of me. There's nothing that says that they must remove. And, in fact, if you look at the course of conduct in this case, if you look at the regulations that apply under the CFRs, the fact of the matter is that they all talk about giving some type of a notice to quit, some type of a demand to quit. Is there a demand to quit provision in this agreement? I'm not aware of a demand to quit provision, no, Your Honor. So you say that essentially your clients, I think you used the word, are holdover tenants? Assent. The equivalent of. They're assent. They're not tenants. They're equivalent of holdover blanks. Yes. Typically in a tenant situation, some states require you, I am told, to give notice to quit and vacate. Other states do not. What is the situation in Oklahoma in that regard? Well, first off, I don't think that Oklahoma law is what actually applies. Okay. Then choose what law does. I think the parties have ended up agreeing that federal common law applies. Holy cats. But federal common law generally, when it relates to property rights, incorporates state law unless there's a good reason not to. Isn't that correct? It certainly does. So we're backing up on the law anyway, aren't we? I don't think we are in this case. I think we're at federal common law. No, no, no. I'm talking about under federal common law. Federal common law, under federal common law, property rights are ordinarily incorporated from state law. So unless there's a good reason not to, am I wrong about that statement? No, Your Honor. Then what's the good reason not to just apply Oklahoma law in determining the substantive rights here? Unless there's, as there isn't at least one issue on consent, unless there's a federal statute specifically in the court. Well, first off, and I'd be happy to talk about the consent issue, but that is, I agree, a completely separate, distinct issue. All right. Now, let's assume that Oklahoma is a State where you have to give notice. Would you agree with me that a complaint that very kind of unceremoniously says, please get out, is notice? A complaint? You mean the filing of a lawsuit? As in the filing of a lawsuit, yes. No, I do not believe that. Oh, you mean they actually had to formally file a lawsuit and also attach a piece of paper that says, this is your notice to get out? Yes, Your Honor. I think they do. And what if they today said, get out? I think there's some good reasons. Is that enough? I think there's some good reasons for why. I think they have to communicate it in the proper way. It doesn't take a whole lot to communicate it, but I don't think the filing of the lawsuit itself does. I mean, the ---- What about the court decision telling you to do that? I'm sorry? Was that litigated before the court, that issue? No, it was not litigated. It was not. Why isn't any defense you may have on that point waived then? Because they had an obligation. The other side was the moving party. They had an obligation to prove each element of their claim. They did not prove this element of the claim. There are several errors in what the trial court did, and that's kind of the problem that we have here. The trial court, candidly, didn't apply the proper summary judgment standard. The Attikes case, the Supreme Court case that I think we all know, is very clear. The burden is on the moving party to prove each element of the claim. That didn't happen here. Well, may I return to where you started out? Yes. What's Oklahoma law on whether expiration of a lease makes you a trespasser or a holdover tenant? Is there law on that subject? There is in the landlord-tenant situation, but that's not what we have here. There isn't, that I'm aware of, in this type of a situation. But we do have, for example, BIA regulations, 25 CFR 169.410. And what's it say on the subject? Well, it's basically, the title of it is, what will BIA do if a grantee remains in possession after a right-of-way expires or is terminated or canceled? Oh, okay. Is this a regulation or is this a disputation among accommodations about what will be done if the guy falls? You're saying this is a BIA reg? This is a BIA reg. What is it? The regulation says what? It says we may treat the unauthorized possession as a trespass under applicable law. We'll communicate with the landowners in making the determination whether to do so. I'm partially quoting and partially not. We may take action to recover possession. The holdover time, if that's the case, will be charged against the new term. Secondly, that's a codification of the practice that the BIA has had. Secondly, in this case, we have a letter by a fellow whose last name is Deerenwater. You can find it in the appendix at pages 136 through 140. And this was the letter that's mentioned in the briefs that says, that rejects the original finding by the BIA that approved the extension of the right-of-way. It rejected it and said, and it concludes, if valid approval of a right-of-way for this tract is not timely secured and ejects, that's predecessor and interest, that's essentially my client, and ejects should be directed to move the pipeline off the subject property. That never happened here. Just repeat that again? Yes. I believe at page 139. I just repeated it. If valid approval of a right-of-way for this tract is not timely secured and ejects should be directed to move the pipeline off the subject property. That hasn't happened here. And that is the crux of our argument. I could go into other details as well, but that's, when you get right down to it, that is the essence of the argument. We've mentioned in the briefs several other arguments. Your Honor, Judge Hartz, you mentioned one of them. Of course, we don't waive those by not presenting them here. If there aren't any further questions now, I'd like to reserve the rest of the time. I'd like to ask on your injunction issue about whether the court improperly issued the injunction without going through the four components. Now, it seems to me that that would be something where the substance of the law that would govern would be Oklahoma law, whether you have to have all four elements for a permanent injunction. That seems to me to be a matter of substance. These things need to be established before an injunction can be entered. So why wouldn't federal common law incorporate Oklahoma law on that point? That's an interesting thought. Further, to complicate the interesting thought, injunctions arise in equity, right? Yes. And those are balancing of factors, right? And you don't have to have all four factors under any law that I know of require you to have all four. It just says that you shall balance those equitable factors and make a determination as to whether, and the court did that, right? Yes, Your Honor. Against you, unfortunately, but it did do so. The problem here is the court didn't balance anything. The court simply said, I'm finding in your favor on the substantive claim, therefore, injunction. I don't have to. I mean, she was very particular. I don't have to consider the four factors. That's why I asked about which law governs, because there's authority in Oklahoma, as I understand it, that if you're a trespasser, there was a case with the church, that if you're a trespasser, all the court has to find is that you're a trespasser, and injunction will issue to vacate the premises and take away the pile of rocks or whatever it was on the church premises. So that's why I'm asking, if this is governed by state law, doesn't state law say if it's a trespass, that's all the court needs to find to enjoin you to remove? No. First off, I don't think it's governed by state law. I think this is a federal common law claim, and I understand federal common law sometimes adopts state law. It almost always does on property rights. I think this, what we're talking about here, is getting an injunction, what you need to do and what the court needs to consider. That strikes me as much more procedural than substantive. You know, gee, there's a ---- It's the standards. It's the standards you apply. It's not saying how you're going to put on evidence, what rules of evidence govern. It says before you're entitled to an injunction, the court, before the court can issue a permanent injunction, it needs to do these four things. Now, for temporary injunctions, we have a federal rule that tells you what you have to do. Yes. But there isn't one for permanent injunctions, which is kind of interesting. And I think that the fact that there is one for temporary injunctions kind of instructs the point that this, what we're talking about here, is ultimately procedural. Before you sit down on the consent question, as I understand the rule, you need consent of whom? How do you understand the consent rule? Is it the one property, one elati, a majority elati, all of them, BIA, secretary, who am I leaving out? The tribe. Which of those are necessary? Under the statute to grant an easement, you need more than what exists, what existed here. That's clear. I don't think that is true for the situation of being on the land itself. That's not, you know, we don't have a right of way at this point. And so I think that's where the difference is, and that's why the Nano-Lopez case is still controlling. It's a different rule as a holdover? Yes. Correct, yes. And why does it, but Nano found unanimous consent, didn't it? I don't recall for sure, but I don't think that matters for what the rule is. If you're, you described yourself as a holdover. If the parties have told you to get out and sued you to get out and the court has agreed with them, don't you become, aren't you really a squatter at this point, not a holdover? I don't think so. The parties have not told us to, unless, here again, unless the filing of the lawsuit itself constitutes that. I don't think it does. I don't think it should. I think there are good public policy reasons not to, so that a party such as my clients can exercise its obligation to get off in an orderly way. The filing of the lawsuit shouldn't be that. I know I don't have much time left. I would like to reserve the little I have. Okay. Thank you. Thank you, Mr. Lester. I'll give you a short rebuttal. Mr. Green. Good morning, Your Honor. My name is Dustin Green. I represent the appellees in this case who have been all of the beneficial owners of Kiowa Law in the Maga Bay before. Now, we're told that Judge LaGrange was in a particularly imperious mood, apparently, on the occasion of hearing this case and said, oh, I don't have to balance factors, I don't have to consider factors, I'm granting this injunction. Is that what happened? I don't believe so, Your Honor.  Well, it's not a matter of beliefs. I mean, we want to know what happened. Sure. And I think if you look at her order, exactly what happened is we argued both the vast body of case law that says you have a right to an injunction, especially to restrain a continuing trespass, both under Oklahoma state law, which is well established, but also lots of federal decisions on that point. We also argued the four-factor test. They responded on the four-factor test, didn't really respond on the other issue. So Judge LaGrange acknowledged that. She acknowledged the case law is very clear. The history of equity here is going to restrain a continuing trespass. But that's not all she did. She then went through and said, here's the situation where you could maybe not have an injunction such as where the owner stood by and let them build on the property and didn't put them on notice. But then she went through the rest of page 9 of her order, and on page 8, she addressed the fact that they have an inadequate remedy at law, which is one of the factors. On page 9, she went through and discussed the fact about irreparable injury and that it was plaintiff's interest in the exclusive possession of their land, which has been invaded by the presence of the pipeline and defendant's continued use of the pipeline. And as we briefed below, we briefed in this court, that is a fundamental property, right? That is irreparable harm. She also spent about half a paragraph balancing the equities and saying, look, the plaintiffs have consistently, from the outset, objected to renewal of this easement, since the issue was first brought to their attention around 2002. By the way, the easement had been expired for two years at that point. They consistently objected to the renewal, and the defendant has done nothing to even attempt to remove its pipeline from the property. So I think she went through the injunction factors. I also want to note, Your Honor, on the ballot- In that context of objecting to the renewal, was there ever any paper that went back and forth that indicated that could be construed as notice to quit and vacate? Well, I think when they expressly objected, and it's only noted in the regional director, Dan Derenwater's decision, that the majority of the interest holders, I believe around 2006, expressly objected to the renewal, and the BIA somehow approved it anyway. We still don't know what happened there, but they expressly objected. And then, Your Honor, as noted, we filed the complaint. And, as they acknowledge in their brief, five days before we filed the complaint, they filed an action to condemn the easement. There's no question they knew they had no right to be on this property. As far as demand being an element of a federal common law trespass claim, demand's not the element. It is being on land belonging to another without the owner's consent. Well, doesn't it depend on what the agreement is? It depends on the- And wouldn't the BLM regulation that opposing counsel cited to us, wouldn't that suggest that the agreement here is, the agreement here incorporates the reg, and the reg says the BLM has some discretion whether to treat them as holdovers or trespassers. And, if that's the case, they ought to give you notice. I'm going to agree with you, Your Honor, and then I'm going to disagree. The regs absolutely apply. The easement, the right-of-way, expressly incorporates 25 CFR 161, which in 1982 was recodified as 169. That's where it still is today. And it absolutely incorporates those regulations. As you, based on your question earlier, the regulation that applies is actually 25 CFR 169.5i, which says the easement holder, once the easement terminates, has to restore the land to its original condition, which in this case would require removal of the pipeline. The other regulation that counsel has cited doesn't authorize the holdover situation. What it says, here is what BIA is empowered to do. BIA can make these assessments. But that regulation speaks to BIA's authority. It does not prejudice my client's rights as the owners to require them to get off the property. Well, if BIA can say you're not a trespasser and we'll just charge you rent in accordance with what the ultimate agreement is, can your clients override the BIA's decision in that regard, not to treat them as a trespasser? Absolutely, because the regulation does not give BIA exclusive authority over that. I think if my clients want to bring an action or require removal of that pipeline, they absolutely have the right to do that, regardless of whether BIA wants to say we would, in our discretion, we would assess back pay to holdover rent. I don't think there's anything in the regulations that gives the BIA the right to override the will of the majority of the interest holders in this case. Okay, remind me. So the agreement here, giving the easement, is between the interest holders and the pipeline company? As approved by the Department of Interior, yes, Your Honor. Okay, so we don't consider the BIA a party to that contract, and the interest holders can act contrary to what BIA wants? In a situation like this, where they have to have majority consent, the interest owners actually can take their own action, which is whether BIA is not a party to this case. In fact, they argued in the trial court that the United States was a necessary party to this action, and that affirmative defense was stricken. And that's not an issue before us. Well, they actually did not then argue it. They did not bring it back up in the context of the injunction. But could all the owners consent to the easement? Would BIA still block that by refusing to give consent? If they determine it's not in the best interest, they have the ability to do that, Your Honor. That's sort of the flip side of what we have here, arguably. Judge Hartz is positing a situation where the BIA does consent to the holdover over the objections of Elati's. You're saying in that circumstance that Elati's lack of consent prevails? I would say so, Your Honor, because the regulations specifically say the BIA has that authority. They specifically say it has to be approved and the BIA has to determine, or actually it's the Secretary, but his authority is delegated to the Secretary. I'd like to ask a naive question. What is the position of the BIA on this? Well, they don't have a position in this case. They took a position in the condemnation action, separate condemnation action they had filed that they did not have the authority to condemn the easement. But they have no role, no participation in this case. And I would say the only position that's been stated is Director Derenwater's position. They should be directed to remove the pipeline from the property. What is your view on the governing law here? Is it federal common law? If it is federal common law, does federal common law incorporate state law to some extent, maybe not to others? What's your position on that? It's not really briefed, but it's essential to our resolution, I think. It is essential to your resolution, Your Honor. And it is federal common law, and I agree with Your Honor, in property rights situations, federal common law will adopt state law unless there is a conflict with a federal statute regulation or some other strong federal policy. That's what the Supreme Court has said in the California XRL State Lands Commission case. In this case, on the issue of demand or consent, they cannot get around the requirements of 25 U.S.C. 324, the majority consent requirement, which they acknowledge and stipulated below repeatedly, they did not have. And I want to point out that their demand argument really shifts, really flips the burden on getting that consent because the statute says the burden is on them to get consent from the majority of the interest owners. It doesn't say the burden is on the interest owners to then demand removal. They have to get affirmative consent to be there, to have a right to be there. To get started, it's a different situation once it's already there. I mean, this whole case is kind of peculiar because you wonder how much injury there really is to having a pipeline under your property. So I can see why you might not, as the pipeline company, you might think that they're really not asking us to remove it. They're driving a hard bargain on what the price is going to be. And for that reason, in that context, it just strikes me as a different situation from when you first want to put the pipeline in the ground. Well, it is. But I think the regulation requiring them to remove it is intended to sort of make them do all this before they apply for the renewal. The regulations also say they're supposed to submit the renewal application on or before the expiration of the prior easement. And they're supposed to have all of the majority consent when they submit that application, Your Honor. So the regulations are really set up so they have to do all this ahead of time. But to your point, Your Honor, it is a little bit of a different situation than normal, just somebody coming on without any permission. And those would have been good arguments for us to flesh out in the district court. They never made this argument. They argued consent, and they pointed to these five consents from minority interest owners that made arguments under the Indian Land Consolidation Act and made statute of limitations arguments they haven't advanced on appeal. They never raised this issue. And it's an issue of consent, not demand being an element. So I believe they've waived it. Well, I mean, the only thing they argued was consent. But if you got summary judgment and you didn't establish an element of your claim, that's too bad for you on appeal. The summary judgment is going to be set aside. So it does make a difference whether demand is required, and it makes a difference whether the presence of demand is an element of your claim or absence of demand is a defense. But this is one of those things where they don't have to have preserved it below, at least under their theory. Do you agree with that? Under their theory, yes, Your Honor. But we stringently disagree with their theory that demand is required. And, I mean, we've laid all that out in our briefs. They get that demand requirement from a Ninth Circuit case. It relies on a New York case that's based on state law that then cites a restatement section that actually doesn't have any demand requirement in it. So what is the law in Oklahoma on that point? Well, to the best of my knowledge, Your Honor, it's addressed in the Bledsoe case that this Court decided back in 1965. And in that case, it was the same situation. It was landlord-tenant, but it was holdover. And the defendant argued that he was entitled to demand. It was actually he got three days' demand. He said, I shouldn't be entitled to a 30-day demand. And this Court said that's not required because this case is governed by federal common law. But then went on to analyze the Oklahoma statute and said, because you had a lease with an express termination date, there's no notice to quit required under Oklahoma law. And that statute is still unaffected. And what's the name of that case? Bledsoe, Your Honor. United States. Bledsoe v. United States. So that's why it seems that would be dispositive. I would think so, Your Honor. We discussed it in our brief. I don't believe they've responded to it in any of the briefing, and I haven't heard anything about it today. What about the rank they cited today? Doesn't that put a little different color on this issue? I mean, it makes it sound like we're not automatically treating you as a trespasser. And if that's the case, then shouldn't you get notice that you're being treated as a trespasser? Your Honor, I would respectfully disagree with that reading of the regulation. Again, I think that regulation only gives BIA discretionary authority to do certain things. It doesn't prejudice my clients. But even if it did, thereafter, and they repeatedly stipulated these facts in the district court, the majority of interest owners expressly objected. They appealed the 2008 decision approving the right-of-way. Clearly, they were not consenting to the right-of-way at that point. Thereafter, and they note in their brief, the landowners refused to negotiate with them. They did not want them on their property. And then they filed a condemnation action, and then we filed an action to remove them from the property. Their actions could be construed as we want a lot more money for the lease, as opposed to we actually want this pipeline off. I would think that that makes more sense, that they want more money rather than remove a pipeline that's not. I would say none of that was developed in the district court. I think at some point, Your Honor, we're finding my clients want them off their property. They're tired of dealing with them. They don't want them there anymore. But again, that was, again, this argument about demand and negotiations, this was never raised in the district court. And now they're trying to inject this for the first time in the case on appeal, which we don't believe they should. In Nono, we seem to hold that the Secretary's consent, BIA's consent was not required. In that case, it was just that the landowner's consent was required. What's your take on that? My take is that Nono is a slightly different case, Your Honor, because it was a lease to the tribe, and I don't believe it was not a right-of-way falling under Section 324. And in that case, it was undisputed below that all the plaintiffs had consented. And in fact, that it was a five-year lease, and before the end of the lease period, the property had been restored to its original condition. There was no issue about consent. And I would say even their reading of Nono, Your Honor, is a stretch, because Nono was not injecting this co-tenancy, you get consent from some people, maybe you don't have it from others. It was all the plaintiffs. It did not address the majority consent requirement that is statutory from Congress in Section 324, and didn't address the situation we have here. So I think Nono is easily distinguishable from this case, Your Honor. So I'm about out of time. I'm happy to answer any questions about any other aspects of the issues before the Court, if you have them. If not, I respectfully ask that the district court's decision be affirmed. Thank you, Counsel. Could you give Mr. Luster a minute and 30? A minute and 30, I think. Is that right? A minute and 30? Yeah, a minute and 30. We'll start with one and see how he's doing. Excellent. You're speaking 50 percent faster than you otherwise would. I will try. First off, LEDSO does not apply to this case. That's a landlord-tenant case. It's specifically under a landlord-tenant provision of the Oklahoma statutes. Oops, oops, careful, careful, careful. Because if you have any hope of holdover status required notice, you're going to have to sort of rely on landlord-tenant law, aren't you? Judge Lucero, I respectfully disagree with you. Explain why. Well, so, for example, if you go again to Appendix Page 139 and you look at the deer and water letter, right in the middle of that page, what he says is that he is remanding, when he rejects the deal that was presented, he says, I'm remanding this case for further negotiation. And that's consistent with the regulation that I cited, Section 169.410. And he's with the BIA, is he? That's correct, yes. Okay, go ahead and finish, but that raises an important question for me. Well, that is, that's what we were doing. That's, we were in the midst of negotiations when the lawsuit was filed. And that's what this is all about. All right. So did you file any motions to dismiss or failure to join an indispensable party? Honestly, Your Honor, I do not recall. Well, I mean, in this case, did you file any? I do not. I was in counsel below. I don't recall. I do believe the issue was joined in this case somehow, but I don't know that that motion was filed. All right. Thank you. Thank you. So we did it in 139. Thank you, counsel. We appreciate the arguments well presented. Counselor, excuse, the case will be submitted. The court will be in recess until tomorrow morning.